UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

NELSON CASTILLO,

           Plaintiff,

v.                                          Case No. 5:17-cv-107-Oc-34PRL

THE UNITED STATES OF AMERICA,
et al.,

           Defendants.

_____

## **ORDER**

### I. Status

Plaintiff Nelson Castillo, an inmate in the Federal penal system, initiated this action on March 9, 2017, by filing a Civil Rights Complaint (Complaint; Doc. 1) pursuant to Bivens[1] and the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346. He filed an Amended Complaint (Amended Complaint; Doc. 8) on June 12, 2016. In the Amended Complaint, Castillo names the following Defendants: (1) the United States of America; (2) the Federal Bureau of Prisons; (3) M. Ocasio, the warden of Federal Correctional Complex Coleman Low (Coleman); (4) Edgar Morales, a mid-level practitioner at Coleman; (5) Montalvo, the Assistant Health Services Administrator at Coleman; (6) Dr. Lopez, a medical doctor at Coleman; (7) Dr. Lee, a medical doctor at Coleman; (8) Dr. Venuto, a medical doctor at Coleman; (9) Delalamon, a mid-level practitioner at Coleman; and (10) Nurse Fabion, an advanced registered nurse practitioner at Coleman. He asserts that Defendants were deliberately indifferent or negligent in treating his

---

[1] Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

serious medical needs involving breathing problems, back pain, and other medical conditions. He seeks monetary damages.

This matter is before the Court on Defendant Lu Anne Faubion's Motion to Dismiss (Faubion Motion; Doc. 38), filed on June 15, 2018, and the Federal Defendants' Motion to Dismiss (Federal Defendants Motion; Doc. 42), filed on August 8, 2018.[2] Plaintiff filed his response. See Plaintiff Nelson Castillo Traverse to Federal Defendants' Motion to Dismiss (Traverse; Doc. 43). Defendants' Motions are ripe for review.

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that

---

[2] As used in this Order, the "Federal Defendants" refers to the United States of America, the Bureau of Prisons, M. Ocasio, Edgar Morales, Montalvo, Dr. Lopez, Dr. Lee, Dr. Venuto, and Delalamon.

the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (internal quotations omitted); <u>see also Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>See Iqbal</u>, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as <u>de facto</u> counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" <u>Alford v. Consol. Gov't of Columbus, Ga.</u>, 438 F. App'x 837, 839 (11th Cir. 2011)[3] (quoting <u>GJR Invs., Inc. v. Cty. of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), <u>overruled in part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 706).

---

[3] Although an unpublished opinion is not binding . . . , it is persuasive authority." <u>United States v. Futrell</u>, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

### III. Amended Complaint[4]

Castillo asserts that, on July 3, 2015, he had a breathing problem and was escorted to medical. (Amended Complaint Addendum 1 (Addendum 1); Doc. 8-1 at 9). He states that he told Defendant Morales that his tongue was swollen and had pus bumps on it, but Morales stated there was nothing wrong and there weren't any pus bumps. Id. at 10. On July 6, 2015, Castillo returned to medical and was examined by Defendant Delalamon. Id. Delalamon examined Castillo, diagnosed him with tonsillitis, and prescribed Amoxicillin. Id. at 13-14. Castillo asserts that Defendant Morales denied him medical treatment and was negligent. Id. at 9.

Castillo also asserts that, on September 17, 2015, he reported to sick call to complain about existing medical problems with his toe, back, and knees. (Amended Complaint Addendum 2 (Addendum 2); Doc. 8-2 at 5). Castillo further claims that on October 12, 2015, he suffered from rectal bleeding. In general, Castillo insists these conditions were not treated properly by Defendants. He contends that he was not given medication to properly control his pain, not provided adequate testing to diagnose his conditions, and not seen by qualified medical personnel. He further asserts that Defendants acted with deliberate indifference to his conditions. Id. at 10-11.

### IV. Summary of the Arguments

In the Faubion Motion, Defendant Faubion asserts that the Court should dismiss the case with prejudice because: (1) Castillo failed to exhaust the administrative remedies under the Prison

---

[4] The Amended Complaint is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Amended Complaint and may differ from those that ultimately can be proved.

Litigation and Reform Act (PLRA), see Faubion Motion at 11-12, (2) a lawsuit against her in her official capacity is barred as a matter of law, see id. at 13, and (3) Castillo failed to state a claim upon which relief may be granted and she is entitled to qualified immunity, see id. at 13-17.

In the Federal Defendants Motion, the Federal Defendants assert that the Court should dismiss the case with prejudice because: (1) Castillo failed to exhaust his constitutional claims under the PLRA, see Federal Defendants Motion at 6-8, (2) Castillo failed to state a claim under the Constitution and Defendants are entitled to qualified immunity, see id. at 9-13, (3) Castillo failed to state a claim of supervisory liability against Defendants Ocasio and Montalvo, see id. at 13-14, (4) Castillo failed to state a claim under the FTCA against all Defendants except for the United States, see id. at 14-15, and (5) Castillo failed to state a claim of medical negligence, see id. at 15-16.

In his Traverse, Castillo maintains that (1) he did exhaust his claims, see Traverse at 3-13, (2) he properly sued each federal defendant in their individual capacities, see id. at 13, and (3) his allegations of negligence track the Black's Law Dictionary definition of negligence, see id. at 13-14. As such, Castillo requests that Court deny the motions to dismiss. See id.

## V. Discussion

### A. Exhaustion of Administrative Remedies

#### 1. Exhaustion under the PLRA

The PLRA requires prisoners who wish to challenge some aspect of prison life to exhaust all available administrative remedies before resorting to the courts. Porter v. Nussle, 534 U.S. 516, 532 (2002); see 42 U.S.C. § 1997e(a). Exhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court. Jones v. Bock, 549 U.S. 199, 211 (2007). Indeed, the "plain language" of § 1997e(a), exhaustion is a "precondition to filing an action in federal court," see

Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (internal quotation marks omitted), and as such, a prisoner must "exhaust prison grievance remedies before initiating a lawsuit," see Jones, 549 U.S. at 204. Nevertheless, a prisoner such as Castillo is not required to plead exhaustion. See id. at 216. Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Notably, not only is exhaustion of available administrative remedies a mandatory "precondition to an adjudication on the merits," Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008), "the PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[5] 286 F.3d, at 1024. . . .

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

Ross v. Blake, 136 S. Ct. 1850, 1862 (2016).

---

[5] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant, 530 F.3d at 1374. The Eleventh Circuit has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081.[6] In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).

### 2. Exhaustion under Bureau of Prisons Grievance Procedure

The Bureau of Prisons provides a three-level administrative grievance procedure for inmate complaints (institutional, regional, and national). 28 C.F.R. § 542.10 - § 542.16. Initially, an inmate may seek resolution of the issues by seeking an informal resolution with staff. Id. at § 542.13(a). If unsuccessful, an inmate may then file a formal written complaint with the institution. Id. at § 543.13(b). The informal request must be completed, and the formal request filed, within "20

---

[6] Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).

calendar days following the date on which the basis for the Request occurred." § 542.14(a). An appeal must then be taken to the Regional Director. Id. at § 542.15. Finally, an inmate should appeal the Regional Director's response to the General Counsel for the BOP. Id. at § 542.14(a). Upon issuance of a response from the General Counsel, an inmate's available administrative remedies are deemed exhausted. Each of these steps is generally required to satisfy the exhaustion requirement. However, at any of these steps, if a grievance is filed outside the parameters established by the BOP, the BOP will reject and return the grievance to the inmate. Id. at § 542.17.

### 3. Castillo's Exhaustion Efforts with Regard to his Bivens Claims alleging violations of his Constitutional Rights

Defendants maintain the Castillo failed to exhaust his administrative remedies, as required by the PLRA. See Faubion Motion at 11-12; Federal Defendants Motion at 6-8. In support of this contention, the Federal Defendants submit Castillo's grievances for the relevant time period, see Exhibit to Federal Defendants Motion (Federal Exhibit, Doc. 42-1 at 2-86), and assert that Castillo failed to properly and fully exhaust his claims before filing this suit. See Federal Defendants Motion at 7-8. In response, Castillo contends that the copies of the grievances attached to his Amended Complaint and Traverse show that he did exhaust and that all these medical issues are interrelated. Traverse at 9, 11.

As to the initial step in the two-part process for deciding motions to dismiss for failure to exhaust under the PLRA, the Eleventh Circuit has instructed:

> District courts first should compare the factual allegations in the motion to dismiss and those in the prisoner's response and, where there is a conflict, accept the prisoner's view of the facts as true. "The court should dismiss if the facts as stated by the prisoner show a failure to exhaust." Id.[7]

Pavao, 679 F. App'x at 823-24.

_____

[7] Whatley, 802 F.3d at 1209.

## a. Addendum 1 - Breathing Problems

On July 7, 2015, Castillo was issued an informal resolution form BP-8. Addendum 1 at 16.

Castillo filled out and submitted the form to a correctional counselor on July 13, 2015. Id. Castillo

wrote:

> On 7-3-15 I had a problem breathing and was escorted to medical
> by L.T. Adams. Upon arriving at medical Med-Level Practitioner
> Moralezs[8] immediately started speeching to me in spanish if this
> is not life threatening you have nothing coming. I told him that my
> tongue was swollen and had pus bumps on it. Med-Level
> Practitioner Moralezs refuse to render me any medical attention,
> stating that there was nothing wrong with me, and that there was no
> pus bumps on my tongue. Two day later i seen med-Level
> Practitioner Delalmone[9] who examine me and determine in fact
> that my tongue was swollen and that pus bumps were on my tongue.
> She prescribed medication for my medical condition. Med-Level
> Practitioner Moralezs showed a deliberate indifference to my
> medical condition and ran me off as if i wasn't human.

Id. at 16-17.[10] On July 22, 2015, C. Carey, correctional counselor, prepared the BP-8 response. Id.

at 18. The response stated:

> During the investigation it revealed the following; your issue was
> sent via … email to the Asst. HSA for the Low Institution for a
> response on July 15, 2015 at 6:37 am. As of today July 22, 2015 I
> have not received a response for this issue.
>
> If you are dissatisfied with this response, you may appeal by filing
> a BP-9.

Id.

On July 23, 2015, Castillo filed his request for administrative remedy form BP-9 with the

Warden. Id. at 19. The BP-9 was assigned case number 829406-F1 and contained the same

---

[8] Castillo spells the name Morales as "Moralezs" at various points in his filings.

[9] Castillo also misspells the name Delalamon at various places in his filings.

[10] In quoting the documents Castillo submitted for all of his grievances the Court provides verbatim quotations without regard to spelling or grammatical errors.

complaint as the BP-8. Id. On July 31, 2015, Defendant Warden Ocasio prepared the Response:

> An investigation into this matter revealed you were seen by the Physician Assistant on July 3, 2015. Ordinarily, calls from institution staff requesting an appointment for an inmate after hours, on weekends or holiday are an emergency in nature. During your interview, you stated the Physician Assistant examined you and he informed you that you had the symptoms of a common cold and you were instructed to sign up for sick call. Additionally, later that day, you went to medical for the insulin line and you addressed your symptoms to the medical staff on duty. Triage was conducted, a second time, with a diagnoses of a common cold and again, you were informed to sign up for sick call. Staff did not refuse to render you medical attention. Based on your own admission, medical staff examined you twice on July 3, 2015 and they both diagnosed your symptoms as a common cold. Your allegation of misconduct has been reviewed for appropriate disposition in accordance with policy. Allegations of misconduct are taken seriously; however, you will not be provided further information regarding the disposition. Accordingly, your Request for Administrative Remedy is **for Informational Purposes Only.**
>
> If you are dissatisfied with this response, you may appeal by filing a BP-10 to the BUREAU OF PRISONS, SOUTHEAST REGIONAL OFFICE, ATTN: REGIONAL DIRECTOR, 3800 Camp Creek Parkway, SW, Building 2000, Atlanta, GA 30331-6226, within 20 calendar days from the date of this response.

Id. at 20.

On September 20, 2015, Castillo submitted a Regional administrative remedy appeal form

BP-10. Id. at 21-22. Castillo wrote:

> Director, on 7-3-15 I woke up at 2:30 a.m., with pain in my throat, ran to the C/O Walters he looked in my mouth & said I had pus balls on tonsels & tongue with swollen throat. The L.T. on shift was notified. The same day I woke at 9:00 a.m. same pain & could hardly breath. I told C/O Williams who callled MLP Moralezs he said it's not life threatening. On the same day I seen Nurse Dudas I didn't mention symptoms, I just told him to look in my mouth & tell me if I had pus bumps, he stated I did and that my tonsels and throat was swollen. On 7-6-15 I was seen my MLP Delalamon she said I had pus bumps and that my tongue was swollen. She stated why I didn't come sooner, later I found out it was a upper respiratory infection.

Id. at 21. On September 25, 2015, the Regional Counsel's Office stamped the BP-10 as received.

Id. The appeal was assigned case number 829406-R1 and was rejected and returned. Id. at 23. The

rejection notice provided two reasons for rejection:

> REJECT REASON 1: YOUR APPEAL IS UNTIMELY.
> REGIONAL APPEALS (BP-10) MUST BE RECEIVED WITHIN
> 20 DAYS OF THE WARDEN/CCM RESPONSE OR RECEIPT
> OF THE DHO REPORT. THIS TIME INCLUDES MAIL TIME.
>
> REJECT REASON 2: PROVIDE STAFF VERIFICATION
> STATING REASON UNTIMELY FILING WAS NOT YOUR
> FAULT.

Id. Castillo received the rejection notice on November 4, 2015. Id. at 23, 24. On November 17,

2015, he prepared his response to the Regional appeal rejection. Id.at 24. The Regional Counsel's

Office stamped the response as received on November 24, 2015. See id. at 21, 23. Plaintiff states

that on November 25, 2015, the Southeast Regional Office again rejected his appeal as untimely,

see id. at 11, but fails to attach the rejection to his Amended Complaint.

On December 12, 2015, Castillo submitted a Central Office administrative remedy appeal

BP-11. Id. at 25. The Central Office received the appeal on December 30, 2015. See id. at 25, 26.

The appeal was assigned case number 829406-A1 and was rejected and returned on January 8,

2016. Id. at 26. The Rejection Notice provided three reasons for rejection:

> REJECT REASON 1: YOU SUBMITTED YOUR REQUEST OR
> APPEAL TO THE WRONG LEVEL. YOU SHOULD HAVE
> FILED AT THE INSTITUTION, REGIONAL OFFICE, OR
> CENTRAL OFFICE LEVEL.
>
> REJECT REASON 2: PROVIDE STAFF VERIFICATION
> STATING REASON UNTIMELY FILING WAS NOT YOUR
> FAULT.
>
> REJECT REASON 3: SEE REMARKS.

> REMARKS: PROVIDE STAFF MEMO EXPLAINING REASON FOR DELAY AND RESUBMIT TO REGIONAL OFFICE AS ADVISED IN PREVIOUS 2 DENIAL.

Id. In his Amended Complaint Castillo does not contend that he submitted any further grievances related to his breathing problems.

In his Traverse, Castillo appears to claim that the breathing problems "are some of the symptoms medically associated with Colonoscopy illness." See Traverse at 4. Therefore, he contends that he did exhaust his grievances related to his breathing problems. Notably, Castillo did not include this argument in any of his grievances. Therefore, Castillo failed to fully exhaust his grievances related to his breathing problems. As such, the Federal Defendants Motion as to the alleged constitutional violation identified in Addendum 1 regarding breathing problems is due to be granted for failure to exhaust.[11]

### b. Addendum 2 - Back Pain

Castillo filed two requests for administrative remedy related to his back pain – numbers 828079 and 842524. See Addendum 2 at 12-25; Federal Exhibit at 15-18. Castillo also filed requests for administrative remedies related to knee problems and pain - number 842518, see Demand for Jury Trial of Medical Treatment (Demand; Doc. 31 at 52-60), foot pain - number 899619, see id. at 79-85, and rectal bleeding - number 899622, see id. at 30, 31, 33-38.

---

[11] The Federal Defendants also assert that Castillo fails to state a claim upon which relief may be granted and they are entitled to qualified immunity. See Federal Defendants Motion at 9-14. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant, 530 F.3d at 1374. Therefore, the Court will not address the Federal Defendants' other arguments since Castillo's Constitutional claims regarding breathing problems are due to be dismissed for Castillo's failure to exhaust.

### i. Administrative Remedy Case Number 828079

On June 22, 2015, Castillo was issued an informal resolution form. See Federal Exhibit at

17. Castillo filled out and submitted the form to a correctional counselor on June 25, 2015. Id.

Castillo wrote:

> I went to sick call initially for this issue in May. I have two herniated
> discs in my back and arthritis throughout my spine. I am also having
> an unknown issue with my left knee. I spoke with Nurse Soto and
> was told I would be placed on the call-out. This has yet to happen. I
> went back to sick call once more and Nurse Soto told me to give
> them a couple more weeks because they are behind schedule.

Id. at 17. On July 8, 2015, C. Carey, correctional counselor, prepared the BP-8 response. Id. at 18.

In the response Carey stated:

> During the investigation it revealed the following; your issue was
> sent via… e-mail to the Asst. HSA for the Low Institution for a
> response on June 30, 2015 at 3:38 am. As of today July 8, 2015 I
> have not received a response for this issue.
>
> If you are dissatisfied with this response, you may appeal by filing
> a BP-9.

Id.

On July 13, 2015, Castillo filed his request for administrative remedy form BP-9 with the

Warden. Id. at 16. The BP-9 was assigned case number 828079-F1. Id. Castillo wrote:

> Warden, I contend that I am being denied medical care. In may I
> went to sick call complaining about my back. I have yet to be place
> on the callout nor have my medical issue been address. The medical
> department is inadequate to handle the medical needs of the inmates
> being housed at this Institution, animal receive better care then
> inmates being house at this Institution. I shouldn't have to keep
> returning to medical requesting medical attention. The process is
> broken, and need to be corrected. It is hard to talk to medical staff
> due to there disrespectful manner when ask about anything. I am
> requesting to be seen by a professional medical personnel.

Id. On July 20, 2015, Defendant Warden Ocasio prepared the Response:

A careful review of this matter was conducted and according to your medical record, you were examined by the Medical Officer on Chronic Care Clinic on May 19, [2015]. You made no mention or complaints of having back pain. On July 6, 2015, you were examined by the Mid-Level Practitioner for an upper respiratory infection and you did not complain or mention having any back issues. In addition, a review of your requests of sick call was made for the last six months and you have not made any complaints of having back pain. Please sign up on sick call and specifically address this issue with the health care provider signing sick call. Therefore, your Request for Administrative Remedy is **for informational purposes only.**

If you are dissatisfied with this response, you may appeal by filing a BP-10 to the BUREAU OF PRISONS, SOUTHEAST REGIONAL OFFICE, ATTN: REGIONAL DIRECTOR, 3800 Camp Creek Parkway, SW, Building 2000, Atlanta, GA 30331-6226, within 20 calendar days from the date of this response.

Id. at 15. There are no records, nor does Castillo allege that he appealed the Warden's response.

As such, he has failed to exhaust his claims related to administrative remedy number 828079.

## ii. Administrative Remedy Case Number 842524

On October 14, 2015, Castillo was issued an informal resolution form. See Addendum 2 at

12. Castillo filled out and submitted the form to a correctional counselor on October 14, 2015. Id.

Castillo wrote:

> Back pain & problems, seen several medical staff. Dr. Venuto, on 9/11/15 & RN Sotto on 9-17-15. This has been going on for several years here. X-ray on May 2012. All I get is Ibuprofen 800 mg & no follow up or evaluation yet. Even with RN Sotto requesting it in May & 9-17-15.

Id. On November 2, 2015, C. Carey, correctional counselor, prepared the BP-8 response. Id. at 13.

In the response Carey stated:

> During the investigation it revealed the following; your issue was sent via… e-mail to the Asst. HSA for the Low Institution for a response on October 26, 2015 at 10:37 am. As of today November 2, 2015 I have not received a response for this issue.

> If you are dissatisfied with this response, you may appeal by filing a BP-9.

Id.

On November 8, 2015, Castillo filed his request for administrative remedy form BP-9 with the Warden. Id. at 14. The BP-9 was assigned case number 842524-F1. Id. Castillo wrote:

> I've explained everything on BP8. I just need medical attention for my Back. Need M.R.I. to see whats wrong & need Pain medication for severe pain. Medical staff should follow up with sick call in a timely manner.

Id. On December 4, 2015, Defendant Warden Ocasio prepared the Response:

> A careful review of this matter was conducted and according to your medical record you were seen by the Mid-Level Practitioner on November 2, 2015, November 4, 2015, and November 19, 2015, but you did not complain of back pain during these visits. On your last visit your issues were addressed, and an alternate pain medication was provided to you. You have a future sick call appointment pending. When you go to this appointment please address your back issue. Therefore, your Request for Administrative Remedy is **for informational purposes only.**
>
> If you are dissatisfied with this response, you may appeal by filing a BP-10 to the BUREAU OF PRISONS, SOUTHEAST REGIONAL OFFICE, ATTN: REGIONAL DIRECTOR, 3800 Camp Creek Parkway, SW, Building 2000, Atlanta, GA 30331-6226, within 20 calendar days from the date of this response.

Id. at 15.

On December 17, 2015, Castillo submitted a Regional administrative remedy appeal form BP-10. Id. at 16-21. Castillo wrote:

> Since i have been here over 4 years. I was put on 6 restrictions because of my back.
> See exhibit "A"
> I'm having problem getting my medical records to know the exact day, but i have been picked up from my dorm in medical truck to go to medical. I have been carried to medical, Ihave been escorted to medical andwas always given a shot for my back pain.

I had X-ray done in May 2012 and it shows 2 degenerated disc and arthritis all through my spine.

Through out the years all i have been given is Ibuprofen 800 mg.

I put a BP-9 case #828709-fl on 7-13-15 with no prevail.

I spoke with RN Soto and she said she remembered both times i saw her in May about my back pain.

Exhibit "B" On 9-5-2015 I explained who i seen and the back pain i am in.

Exhibit "C" on 9-14-2015 To ASHA Mr Montalvo explaing the pain i am in and letting him know i need and MRI.

Exhibit "D" On 11-2-15 On left side of page, i showed this to M.C.L.P. Delalamon it shows all problems/symptoms "she" put a line through patches on legs and wrote a word that start with a P and also put a line through Toe pain and put a check mark next to it. She told me she will see me another day for my problem, that that day was a fallow up for my toe.

On Nov.4,2015 i spokeWarden Ocasio about my rectal bleeding. That's why M.L.P. Delalamon called me to medical. She did not want to speak about anything but the bleeding.

On Nov.19,2015 i was sent to medical for an emergency because black and red boolclot came out of my mouth and a c/o Gannon wittnessed it. I was teken off ibuprofen 800mg to see if that's what was causing the bleeding and i was put on Acetaminophen 325mg. It was not what the Warden said that my issue were addressed.

Id. at 16-17. The appeal was received on December 29, 2015 and was assigned case number

842524-R1. Id. at 22. The Regional Director filed a response on January 8, 2016:

A review of your medical records revealed you have a history of lower back pain, diabetes and morbid obesity. Your medical providers have counseled you on numerous occasions of the importance of losing weight and maintaining a healthy diet, and how weight loss can greatly improve your chronic medical conditions. You were evaluated in the Chronic Care Clinic (CCC) on September 11, 2015, at which time the Staff Physician wrote a prescription of ibuprofen. An x-ray performed on November 13, 2015, revealed degenerative changes in several areas of your lumbar spine. You are encouraged to follow recommendations made by your medical providers to achieve and maintain optimal health.

Your medical providers have not recommended any further diagnostic studies. Should you experience any adverse changes in your condition, return to sick call for reevaluation. Medical care will

continue to be provided to you consistent with Bureau of Prisons' policy.

Monetary damages cannot be provided under the Administrative Remedy Program. If you wish to seek monetary compensation for an injury or loss allegedly caused by staff negligence, you may consider filing a separate claim under the appropriate administrative claim process (i.e. 31 U.S.C. § 3723 or the Federal Tort Claims Act).

Accordingly, this response to your Regional Administrative Remedy Appeal is for informational purposes only. If dissatisfied with this response, you may appeal to the Office of General Counsel. Your appeal must be received in the Office of General Counsel, Bureau of Prisons, 320 First Street, NW, Washington, DC, 20534, within 30 calendar days of the date of this response.

Id.

On January 27, 2016, Castillo filled out a Central Office administrative remedy appeal BP-

11. Id. at 23. Castillo wrote:

Everything is explained on the BP-9 and BP-10. On response to the BP-10 they are admitting that I have a history of lower back pain. But all they do is give me ibuprofen 800mg. An x-ray was preformed May 2013 and showed i had degenerated disc and arthritis thru out my spine. Now another x-ray was done November 13, 2015 revealed degenerative changes in several areas of my lumber spine. How many more years have to go through before i get an M.R.I. and extreme pain medication.

Id. The appeal was assigned case number 842524-A1. Id. at 24. The National Inmate Appeals

Administrator filed a response on April 12, 2016:

We have reviewed documentation relevant to your appeal and, based on the information gathered, concur with the manner in which the Warden and Regional Director addressed your concerns at the time of your Request for Administrative Remedy and subsequent appeal. Our succeeding review reveals you have been evaluated by Health Services on several occasions for lower back pain and have had adjustments in your health care as clinically needed.

Records reflect on November 19, 2015, you were seen for complaints of back pain and were prescribed Acetaminophen. Since then, there is no indication you have had any further complaints of

back pain. Consequently, at this time, there is not insufficient
diagnostic data to make a clinical determination of the need for a
MRI, to be seen by a specialist or to have surgery. Your primary
care team will continue to make recommendations as needed and, as
they are made, a course of treatment will be determined.

…

The record reflects you are receiving medical care and treatment in
accordance with evidence based standard of care and within the
scope of services of the Federal Bureau of Prisons. You are
encouraged to comply with proposed medical treatment so Health
Services can continue to provide essential care and to contact
medical personnel through routine sick call procedures should your
health condition worsen.

Id. at 24-25.

Here, accepting Castillo's view of the facts as true, his claim relating to administrative

remedy case number 842524 was exhausted prior to the filing of this cause of action.

### iii. Administrative Remedy Case Number 842518

On October 13, 2015, Castillo was issued an informal resolution form. See Demand at 52.

Castillo filled out and submitted the form to a correctional counselor on October 14, 2015. Id.

Castillo wrote:

> Knee problems & pain. May 2015 Dr. Seda orderd x-ray weeks later
> went to sick call, RN Sotto said she will request follow up. 9-17-15
> sick call again, RN Sotto said she will request follow up & x-ray
> again. It's 10-13-15 & nothing yet. still in pain.

Id. On November 2, 2015, C. Carey, correctional counselor, prepared the BP-8 response. Id. at 53.

In the response Carey stated:

> During the investigation it revealed the following; your issue was
> sent via… e-mail to the Asst. HSA for the Low Institution for a
> response on October 26, 2015 at 10:36 am. As of today November
> 2, 2015 I have not received a response for this issue.
>
> If you are dissatisfied with this response, you may appeal by filing
> a BP-9.

Id.

On November 8, 2015, Castillo completed his request for administrative remedy form BP-

9. Id. at 54. The BP-9 was assigned case number 842518-F1. Id. Castillo wrote:

> I've explained everything on BP8. I just need medical attention, for
> my knee, been waitting for x-ray since May 2015. Need x-ray then
> M.R.I. I also need pain medication. Medical staff should follow up
> with sick call, in a timely manner.

Id. On December 4, 2015, Defendant Warden Ocasio prepared the Response:

> A careful review of this matter was conducted and accordingly to
> your medical record you were seen by the Mid-Level Practitioner on
> November 2, 2015, but you did not make staff aware of your knee
> pain during these encounters. On your last visit, you were examined
> and provided an alternate pain medication for a different medical
> issue. You have a future sick call appointment pending. When you
> go to this appointment please bring up your knee issue so that
> medical staff can address it. Therefore, your Request for
> Administrative Remedy is **for informational purposes only.**
>
> If you are dissatisfied with this response, you may appeal by filing
> a BP-10 to the BUREAU OF PRISONS, SOUTHEAST
> REGIONAL OFFICE, ATTN: REGIONAL DIRECTOR, 3800
> Camp Creek Parkway, SW, Building 2000, Atlanta, GA 30331-
> 6226, within 20 calendar days from the date of this response.

Id. at 55.

On December 17, 2015, Castillo submitted a Regional administrative remedy appeal form

BP-10. Id. at 56-57. Castillo wrote:

> I've had a problem with my knee and it hurt a lot. I saw Dr. Seda in
> May 2015 and i told him about these, he said he will order Xray and
> start from there.
> I went to sick call twice since then and was seen by RN Soto who i
> explained about my knee.
> I did a BP 9 #828079-f1 on 7-13-15 I explained my knee problem
> and Warden Ocasio said i never broought up knee problems or pain
> before. So i started the procedure again.
> Exhibit "A" on 9-2-15 to health services Low explaining whats
> going on.
> Exhibit "B" on 9-5-15 to health services Low explaining my knee
> problem and letting him know that medical staff are not writing
> downour complaints on record. And asking for help.

Exhibit "C" on 11-2-15 with M.L.P. Ms Delalamon i was explaing all my problem and symptoms; she put a line thru Patche on leg and wrote a word that start with a P and put a line through Toe Pain and checked it off.

On Nov.4,2015 i spoke to Warden Ocasio about my rectal bleeding. Thats why M.L.P. Ms Delalamon called me to medical. She did not want to speak about anything but the bleeding issue.

On Nov.19,2015 I was sent to medical for an emergency because black and red blood clots came out of my mouth and c/o Gannon witnessed it. I was taken off ibuprofen 800mg to see if that what was causing the bleeding and was put on Acetaminophen 325mg.

Id. The appeal was received on December 29, 2015 and was assigned case number 842518-R1. Id. at 58. The Regional Director filed a response on January 8, 2016:

> A review of your medical records revealed you have a history of lower back pain, diabetes and morbid obesity. Your medical providers have counseled you on numerous occasions of the importance of losing weight and maintaining a healthy diet, and how weight loss can greatly improve your chronic medical conditions. You were evaluated by the Staff Physician on May 19, 2015, in the Chronic Care Clinic (CCC). According to the clinical notes, your medical provider discussed your uncontrolled diabetic condition, your medications were renewed, and endocrinology and ophthalmology consultation requests were ordered. No evidence of complaints of knee pain or an x-ray of your knee was found in the clinical notes.

> You were seen in the CCC again on September 11, 2015, at which time the Staff Physician wrote a prescription for ibuprofen to manage your back. No evidence was found to indicate you complained of knee pain during this visit. On December 29, 2015, you were evaluated by the Mid-level Practitioner (MLP) for complaints of abdominal pain and hemorrhoids, and it was noted your fecal occult blood tests were negative for blood. You did not voice any complaints of knee pain during this encounter.

> You are encouraged to follow recommendations made by your medical providers to achieve and maintain optimal health. Your medical providers have not recommended any further diagnostic studies. If you are experiencing pain in your knee, you may address any further issue during your next CCC encounter or return to sick call for an evaluation. Medical care will continue to be provided to you consistent with Bureau of Prisons' policy.

> Monetary damages cannot be provided under the Administrative Remedy Program. If you wish to seek monetary compensation for an injury or loss allegedly caused by staff negligence, you may consider filing a separate claim under the appropriate administrative claim process (i.e. 31 U.S.C. § 3723 or the Federal Tort Claims Act).
>
> Accordingly, this response to your Regional Administrative Remedy Appeal is for informational purposes only. If dissatisfied with this response, you may appeal to the Office of General Counsel. Your appeal must be received in the Office of General Counsel, Bureau of Prisons, 320 First Street, NW, Washington, DC, 20534, within 30 calendar days of the date of this response.

Id.

On January 27, 2016, Castillo filled out a Central Office administrative remedy appeal BP-11. Id. at 59. Castillo wrote:

> This has nothing to do with my medical history. This has to do with my left knee wish i have been complaining about to all the RN's and M.L.P.'s and Dr. Seda. I now walk with a limp. I need an M.R.I. but i won't get it unless i get X-ray's first and they haven't even done that. How many times do i have to go to sick call for this. Please i beg you i need medical attention.
> Exhibit "A" show's what i went to sick call for. And M.L.P. Ms Faubion did not want to hear me out. I don't have abdominal pain. This woman is incompetent.

Id. The appeal was assigned case number 842518-A1. Id. at 60. The National Inmate Appeals Administrator filed a response on March 11, 2016:

> We have reviewed documentation relevant to your appeal and, based on the information gathered, concur with the manner in which the Regional Director addressed your concerns at the time of your appeal. Our subsequent review reveals as noted in the Regional Director's response, there is no record that you have voiced complaints regarding knee pain. It is recommended you report to sick call or submit an Inmate Request to Staff form if you are experiencing knee pain. Consequently, there is insufficient diagnostic data at this time to make a clinical determination of the need for an x-ray, MRI, surgery or to be provided medication for knee pain.

> Regarding your request for monetary compensation, Program Statement 1330.18, <u>Administrative Remedy Program</u>, does not provide such relief. There are statutorily-mandated procedures in place for addressing such requests. Therefore, your request will not be considered in this response.
>
> The record reflects you are receiving medical care and treatment in accordance with evidence based standard of care and within the scope of services of the Federal Bureau of Prisons. You are encouraged to comply with proposed medical treatment so Health Services staff can continue to provide essential care.
>
> Based on the foregoing, this response is provided for informational purposes only.

<u>Id.</u>

Here, accepting Castillo's view of the facts as true, his claim relating to administrative remedy case number 842518 was exhausted prior to the filing of this cause of action.

### iv. Administrative Remedy Case Number 899619

On April 18, 2017, Castillo was issued an informal resolution form. <u>See</u> Demand at 79. Castillo filled out and submitted the form to a correctional counselor the same day. <u>Id.</u> Castillo wrote:

> I'm a Diabetic with Noropathy, my feet hurt from wearing shoes/boots. I was denied diabetic shoes & I need a pair.

<u>Id.</u> On April 20, 2016, a correctional counselor prepared the response noting that issue was informally resolved. <u>Id.</u> The response stated:

> You were examined by the Medical Officer. Although you are a Diabetic you do not meet BOP criteria for medical shoes, but you have been provided shoe inserts.

<u>Id.</u>

On April 25, 2017, Castillo completed his request for administrative remedy form BP-9. <u>Id.</u> at 80. The BP-9 was assigned case number 899619-F1. <u>Id.</u> Castillo wrote:

> I am a diabetic with Noropothy in my feet. My feet hurt a lot. I was given medical shoes before, what changed now?

Id. On May 8, 2015, Warden Withers prepared the Response:

> A careful review of this matter was conducted and according to your medical record you were examined by the contract medical officer on March 30, 2017. She determined your condition was stable and found no abnormalities. She considered Federal Bureau of Prison shoe policy and concluded you did not warrant diabetic shoes. She has however, provided you with a pair of soft innersoles, just in case there's any irritation. The Acting Clinical Director has concurred with this decision, as it is described in Program Statement 6031.04, Patient Care, Chapter 2, Paragraph C. Therefore, your Request for Administrative Remedy is **denied.**

> If you are dissatisfied with this response, you may appeal by filing a BP-10 to the BUREAU OF PRISONS, SOUTHEAST REGIONAL OFFICE, ATTN: REGIONAL DIRECTOR, 3800 Camp Creek Parkway, SW, Building 2000, Atlanta, GA 30331-6226, within 20 calendar days from the date of this response.

Id. at 81.

On May 20, 2017, Castillo submitted a Regional administrative remedy appeal form BP-10. Id. at 82. Castillo wrote:

> Mr. Castillo is appealing the warden's denial of his BP-9 filing – Remedy Case Number: 899619-F1. Mr. Castillo complains of deliberate indifference to a known medical need – Diabetic Neuropothy, which requires special diabetic shoes to reduce the significant pain and discomfort which impairs his daily activities. The warden states that the decision to deny such medical shoes comports with P.S. 6031.04, Patient Care, chapter 2, ¶ C. Upon review, there is no ¶ C of Chapter 2 and does not support the warden's claim.

> However, P.S. 6031.04, chapter 7, ¶ b, Medically Necessary-Non Emergent states: Medical conditions that are not immediately life-threatening but without care the inmate could not be maintained without significant risk of: Significant pain or discomfort which impairs the inmate's participation in activities of daily living.

> Additionally in the same Program Statement Chapter 47 Miscellaneous, ¶ c, Medical Footwear it states: Occasionally,

> custom shoes or orthotic devices may be medically necessary to accommodate a significant foot deformity or to decrease the chance of injury to feet with impaired sensation. For example, an inmate with diabetic neuropathy may need an extra deep, extra wide toe box … in order to minimize irritation. Custom shoes or orthotic devices will be purchased through the institution Health Services Cost Center. Mr. Castillo requests these custom diabetic shoes.

Id. The appeal was received on May 25, 2017 and was assigned case number 899619-R1. Id. The

Regional Director filed a response on June 23, 2017:

> A review of your medical records revealed you were issued shoe inserts and heel cups on March 22, 2017. You were evaluated in the Chronic Care Clinic on March 30, 2017; however, the Physician did not recommend medical shoes. You do not have a history of any foot deformities, which is a requirement for medical shoes. The Bureau of Prisons is required to provide you with a pair of well-fitting institution shoes. You are advised to follow up with the Laundry Department if you are having problems with the fitting of your shoes.
>
> Monetary damages cannot be provided under the Administrative Remedy Program. If you wish to seek monetary compensation for an injury or loss allegedly caused by staff negligence, you may consider filing a separate claim under the appropriate administrative claim process (i.e. 31 U.S.C. § 3723 or the Federal Tort Claims Act).
>
> Accordingly, this response to your Regional Administrative Remedy Appeal is for informational purposes only. If dissatisfied with this response, you may appeal to the Office of General Counsel. Your appeal must be received in the Office of General Counsel, Bureau of Prisons, 320 First Street, NW, Washington, DC, 20534, within 30 calendar days of the date of this response.

Id. at 83.

On July 15, 2017, Castillo filled out a Central Office administrative remedy appeal BP-11.

Id. at 84. Castillo wrote:

> Mr. Castillo appeals SERO's denial of his BP-10 filing 899619-R1. The response is in error and does not address the fact that Mr. Castillo has been diagnosed with having diabetic neuropathy and that the Program Statement speaks specifically about this medical condition requiring custom medical shoes. A medical need exists

here and Coleman Low Medical Services are deliberately denying
the remedy for it. Mr. Castillo appeals to this level for a remedy prior
to reaching judicial review and provide custom diabetic shoes for
his diagnosed neuropathy.

Id. The appeal was assigned case number 842518-A1. Id. at 85. The National Inmate Appeals

Administrator filed a response on August 8, 2017:

> We have reviewed documentation relevant to your appeal and, based
> on our findings, concur with the manner in which the Warden and
> Regional Director responded to your concerns at the time of the
> Request for Administrative Remedy and subsequent appeal. Our
> succeeding review reveals your clinician has determined you have
> stable non-proliferative Diabetes Retinopathy. Therefore, at this
> time, your clinician has found insufficient diagnostic data to make a
> clinical determination of the need for you to be prescribed custom
> medical shoes. If you are having issues, you need to request sick call
> for your complaints. Your primary care team will continue to make
> recommendations as needed. As recommendations are made, a
> course of treatment will be determined. Given this, we shall defer
> diagnostic testing and treatment interventions to the Health Services
> staff at the local level.
>
> Based on this information, there is no evidence to substantiate your
> claim of being denied appropriate medical care of that of deliberate
> indifference on the part of medical staff. Therefore, we find no
> rationale warranting further review of your claim.
>
> The record reflects you are receiving medical care and treatment in
> accordance with evidence based standard of care and within the
> scope of services of the Federal Bureau of Prisons. You are
> encouraged to comply with proposed medical treatment so Health
> Services staff can continue to provide essential care and to contact
> medical personnel through routine sick call procedures should your
> condition change.
>
> Considering the foregoing, your appeal is denied.

Id.

Here, accepting Castillo's view of the facts as true, he failed to exhaust his claim relating

to administrative remedy case number 899619 prior to the filing of this cause of action on March

9, 2017, and prior to the filing of his Amended Complaint on June 3, 2017. As such, this claim is

unexhausted and due to be dismissed without prejudice. <u>Williams v. Barrow</u>, 559 F. App'x 979, 987 (11th Cir. 2014).

### v. Administrative Remedy Case Number 899622

On April 18, 2017, Castillo was issued an informal resolution form. <u>See</u> Demand at 30. Castillo filled out and submitted the form to a correctional counselor the same day. <u>Id.</u> at 30-32. Castillo wrote:

> I've been having Rectal Bleeding for a couple years now. Last Colonoscopy was Jan. 2016 & I'm still bleeding a lot.

<u>Id.</u> at 30. On April 20, 2016, a correctional counselor prepared the response noting that the issue was informally resolved. <u>Id.</u> The response stated:

> More than 50% of Americans suffer from hemorroids [sic]. Your last colonoscopy was done on January 21, 2016, where no abnormalities were noted. Procedures or follow ups were not recommended for three years. Per medical.

<u>Id.</u>

On April 25, 2017, Castillo completed his request for administrative remedy form BP-9.

<u>Id.</u> at 33. The BP-9 was assigned case number 899622-F1. <u>Id.</u> Castillo wrote:

> I was checked by M.L.P. Morales & M.L.P. Delalamon. I don't have hemmorroids. My colonoscopy on January 21, 2016 was not done thoughly I still had food inside of me & the Doctor said so. The Doctor said if I continue to have dark blood & clots to let medical know. I let medical know for over a year, I told & emaile A.S.H.A. Mr. Montalvo, P.A. Ms. Ramos & Dr. Franco as well as M.L.P. Delalamon, Ms. Cook, Ms. Ivy & I also had c/o Slaight wittness all the Blood, clots & dark red stingy stuff, on 1/30/16 Sat. at 4:51 pm, on 8-9-16, 9-9-16, 9-11-16. C/o Bowman witnessed it as well.

<u>Id.</u> On May 8, 2017, Warden Withers prepared the Response:

> A careful review of this matter was conducted and according to your medical record you were seen by health services staff on several occasions, but you complained of rectal bleeding just twice since your last colonoscopy. This colonoscopy was done on January 27,

2016, and although the colon was visualized in its entirety and there was no significant findings noted throughout the entire length of the colon, on March 1, 2017 the Mid-Level Practitioner requested a new colonoscopy due to the incomplete prepping of the previous one, just to be sure. This procedure is being scheduled and will be performed as soon as we have a date. Therefore, your Request for Administrative Remedy is for **informational purposes only**

If you are dissatisfied with this response, you may appeal by filing a BP-10 to the BUREAU OF PRISONS, SOUTHEAST REGIONAL OFFICE, ATTN: REGIONAL DIRECTOR, 3800 Camp Creek Parkway, SW, Building 2000, Atlanta, GA 30331-6226, within 20 calendar days from the date of this response.

Id. at 34.

On May 20, 2017, Castillo submitted a Regional administrative remedy appeal form BP-10. Id. at 35. Castillo wrote:

Mr. Castillo appeals the warden's informational response to his BP-9 filing Remedy Case Number 899622-F1. In his filing he complains of deliberate indifference for not treating his known medical need – anal bleeding/blood in stool. The warden's response stated that Mr. Castillo has only complained of rectal bleeding twice since his last colonoscopy which was done on January 27, 2016. Mr. Castillo is submitting proof that he has contacted the medical department through email 04/18/2017, as well as many numerous times throughout the years in addition to sick call. Even further, is only two complaints not enough to warrant medical assistance. The warden seems to belittle the medical need because Mr. Castillo has only been documented of 2 complains. Medical need dictates as appropriate response.

P.S. 6031.04, chapter 7, ¶ b. Medically Necessary-Non Emergent states: Medical conditions that are not immediately life-threatening but which without care the inmate could not be maintained without significant risk of: Significant pain or discomfort which impairs the inmate's participation in activities of daily living. This includes bowel movements that are painful and chronic. Mr. Castillo requests an expedited remedy to his long suffering and chronic medical need.

Id. The appeal was received on May 25, 2017 and was assigned case number 899622-R1. Id. The Regional Director filed a response on June 23, 2017:

An investigation revealed you were evaluated by the onsite General Surgeon, who recommended an off-site consult for a colonoscopy because your previous procedure was not completed due to poor preparation. This request was referred to the Utilization Review Committee (URC) on June 14, 2017, and will be presented at the next URC meeting. Health Services will notify you on the URC decision, and if approved, an appointment will be scheduled accordingly.

Should you experience any adverse changes in your condition, return to sick call for reevaluation. We will continue to provide medical care to you consistent with Bureau of Prisons' policy.

Monetary damages cannot be provided under the Administrative Remedy Program. If you wish to seek monetary compensation for an injury or loss allegedly caused by staff negligence, you may consider filing a separate claim under the appropriate administrative claim process (i.e. 31 U.S.C. § 3723 or the Federal Tort Claims Act).

Accordingly, this response to your Regional Administrative Remedy Appeal is for informational purposes only. If dissatisfied with this response, you may appeal to the Office of General Counsel. Your appeal must be received in the Office of General Counsel, Bureau of Prisons, 320 First Street, NW, Washington, DC, 20534, within 30 calendar days of the date of this response.

Id. at 36.

On July 15, 2017, Castillo filled out a Central Office administrative remedy appeal BP-11.

Id. at 37. Castillo wrote:

Mr. Castillo appeals SERO's response in Remedy No. 899622-R1. He suffers needlessly when a medical remedy is available. The delay in treatment is painful and disruptive to his normal functionality and daily activities. He seeks an expedited medical treatment to resolve his known medical needs that are fully documented.

Id. The appeal was assigned case number 842518-A1. Id. The National Inmate Appeals

Administrator filed a response on August 11, 2017:

We have reviewed documentation relevant to your appeal and, based on our findings, concur with the manner in which the Warden and Regional Director responded to your concerns at the time of your Request for Administrative Remedy and subsequent appeal. Our

succeeding review reveals the consultation request for a Colonoscopy was approved by the Utilization Review Committee (URC) on June 27, 2017, with a note this request is for a repeat colonoscopy. Due to security reasons, we are not able to disclose the scheduled appointment date. After the consultation is complete, your providers will determine an appropriate plan of care, based on the subsequent recommendations.

Your primary care team will continue to make recommendations as needed. As recommendations are made, a course of treatment will be determined. Given this, we defer treatment interventions to that which is provided by Health Services staff at the local level.

The record reflects you are receiving medical care and treatment in accordance with evidence based standard of care and within the scope of services of the Federal Bureau of Prisons. You are encouraged to comply with proposed medical treatment so Health Services staff can continue to provide essential care and to contact medical personnel through routine sick call procedures should your condition change.

Considering the foregoing, this response is provided for informational purposes only.

Id.

Here, accepting Castillo's view of the facts as true, he failed to exhaust his claim relating to administrative remedy case number 899622 prior to the filing of this cause of action on March 9, 2017, and prior to the filing of his Amended Complaint on June 3, 2017. As such, this claim is unexhausted and due to be dismissed without prejudice. Williams, 559 F. App'x at 987.

**vi. Defendant Faubion's Motion**

In Addendum 2, Castillo raises complaints about toe, back, and knee pain, as well as rectal bleeding. Addendum 2 at 5-11. Of the five requests for administrative remedy Castillo submitted regarding these issues, he only completed the exhaustion process for numbers 842518 and 842524 prior to his filing of this cause of action. Both of these exhausted grievances were initiated on October 14, 2015, and referenced his complaints regarding the medical care he had received up to

29

that point regarding his back pain (842524) and knee pain (842518). See Demand at 52; Addendum 2 at 12. However, Castillo's claims against Faubion arise out of a follow-up visit on December 29, 2015, an allegation that on December 30, 2015, he went to pill line to pick up the Ibuprofen that was prescribed at the follow-up visit but Faubion did not place the order, and a June 30, 2016 sick-call. See Addendum 2 at 8, 10. None of those claims were properly exhausted before the filing of this action. Williams, 559 F. App'x at 987. As such, Defendant Faubion's Motion seeking dismissal of Castillo's claims against her for failure to exhaust is due to be granted.

### vii. Federal Defendants' Motion

As noted above, although Castillo filed five requests for administrative remedy regarding the issues he raises in Addendum 2; he only completed the exhaustion process as to numbers 842518 and 842524 prior to filing this cause of action. As such, Federal Defendants' Motion seeking dismissal of Castillo's claims regarding foot/toe pain – administrative remedy number 899619, rectal bleeding – administrative remedy number 899622, and administrative remedy number 828079 (June 2015 back pain) is due to be granted.

### B. Supervisory Liability

Defendants Ocasio and Montalvo assert that the Court should dismiss Castillo's claims against them because they are supervisors and Castillo fails to state how they personally participated in his medical care or how they directed their subordinates to act unlawfully. See Federal Defendants Motion at 13-14. It is well established in the Eleventh Circuit that supervisory officials are not liable under § 1983 or Bivens[12] for the unconstitutional acts of their subordinates

---

[12] Because claims under 42 U.S.C. § 1983 and Bivens are similar, courts generally apply § 1983 law to Bivens cases. Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir. 1995).

on the basis of respondeat superior or vicarious liability. Hartley v. Parnell, 193 F.3d 1263, 1269

(11th Cir. 1999). The United States Court of Appeals for the Eleventh Circuit has stated:

> "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez, 325 F.3d at 1234 (internal quotation marks and citation omitted).[13] "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

> "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" Cottone, 326 F.3d at 1360 (citation omitted).[14] "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. A plaintiff can also establish the necessary causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," Gonzalez, 325 F.3d at 1235, or that a supervisor's "custom or policy . . . resulted in deliberate indifference to constitutional rights," Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991).

Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008) (overruled on other grounds as recognized

by Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010) (rejecting the application of a heightened

pleading standard for § 1983 cases involving qualified immunity)); see also Keith v. DeKalb Cty.,

Ga., 749 F.3d 1034, 1047-48 (11th Cir. 2014). In sum,

> To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of

---

[13] Gonzales v. Reno, 325 F.3d 1228 (11th Cir. 2003).

[14] Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003).

his constitutional rights,[15] (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights,[16] (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it,[17] or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct. See id. at 1328–29 (listing factors in context of summary judgment).[18] A supervisor cannot be held liable under § 1983 for mere negligence in the training or supervision of his employees. Greason v. Kemp, 891 F.2d 829, 836–37 (11th Cir. 1990).

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (per curiam).

Upon review, Castillo alleges sufficient facts suggesting that Defendant Montalvo was personally involved in, or otherwise causally connected to, alleged violations of his constitutional rights. See, e.g., Addendum 2 at 12, 16, 19-20.[19] However, Castillo has failed to allege sufficient facts against Defendant Ocasio. In reaching this conclusion, the Court observes that Castillo alleges that he spoke to Defendant Ocasio about rectal bleeding and that later that day he was called to medical for a rectal exam. Id. at 7. Not only is this claim unexhausted, the allegation fails

---

[15] See Goebert v. Lee Cty., 510 F.3d 1312, 1327 (11th Cir. 2007) ("Causation, of course, can be shown by personal participation in the constitutional violation.").

[16] See Goebert, 510 F.3d at 1332 ("Our decisions establish that supervisory liability for deliberate indifference based on the implementation of a facially constitutional policy requires the plaintiff to show that the defendant had actual or constructive notice of a flagrant, persistent pattern of violations.").

[17] See Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008) ("Douglas's complaint alleges that his family informed [Assistant Warden] Yates of ongoing misconduct by Yates's subordinates and Yates failed to stop the misconduct. These allegations allow a reasonable inference that Yates knew that the subordinates would continue to engage in unconstitutional misconduct but failed to stop them from doing so.").

[18] West v. Tillman, 496 F.3d 1321 (11th Cir. 2007).

[19] In reaching this conclusion, the Court observes that Castillo asserts that he had spoken to Montalvo about his back and knee pain and sent him multiple emails complaining about the medical care for his back that he had received and that he had been denied proper medical care resulting in long-term back issues.

to support any plausible claim of deliberate indifference. Castillo's other allegations against Defendant Ocasio fail to state a claim as they are based solely on Ocasio's denials of grievances. See Gross v. Jones, No. 3:18cv594-J-39PDB, 2018 WL 2416236, at *4 (M.D. Fla. May 29, 2018); Magwood v. Fla. Dep't of Corr., No. 3:12cv14/MCR/CJK, 2012 WL 5279178, at *4 (N.D. Fla. Oct. 11, 2012) (The filing of a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied.) Report and Recommendation adopted, 2012 WL 5279170 (N.D. Fla. Oct. 25, 2012).[20] Therefore, the Federal Defendants' Motion is due to be granted to the extent it seeks dismissal of Castillo's claims against Defendant Warden Ocasio.

## C. Eighth Amendment Deliberate Indifference

In Bivens, the Supreme Court held a plaintiff may bring certain causes of action for damages against a federal officer based on a violation of constitutional rights. Bivens, 403 U.S. at 397. The Supreme Court has extended Bivens and inferred a cause of action against prison officials for violating a prisoner's Eighth Amendment right to adequate medical care. Carlson v. Green, 446 U.S. 14 (1980). Because claims under 42 U.S.C. § 1983 and Bivens are similar, courts generally apply § 1983 law to Bivens cases. Abella, 63 F.3d at 1065.

---

[20] See Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); Grinter v. Knight, 532 F.3d 567, 576 (6th Cir. 2008) ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983.") (quoting Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)); Lomholt v. Holder, 287 F.3d 683, 683 (8th Cir. 2002) (holding that defendants' denial of plaintiff's grievances did not state a substantive constitutional claim); see also Rickerson v. Gills, No. 5:11cv279/MP/GRJ, 2012 WL 1004733, at *3 (N.D. Fla. Feb. 8, 2012) (finding prisoner failed to state § 1983 claim against prison official whose sole involvement was to review and deny plaintiff's administrative grievance at the DOC Secretary's level of review.) Report and Recommendation adopted, 2012 WL 1004724 (N.D. Fla. Mar. 22, 2012).

To state a <u>Bivens</u> claim, a plaintiff must allege that (1) a federal official acting under the color of federal law (2) deprived him of a right secured by the United States Constitution. <u>Powell v. Lennon</u>, 914 F.2d 1459, 1463 (11th Cir. 1990). Moreover, the Eleventh Circuit "'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in [<u>Bivens</u>] cases." <u>Rodriguez v. Sec'y, Dep't of Corr.</u>, 508 F.3d 611, 625 (11th Cir. 2007) (quoting <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986)); <u>see</u> <u>also</u> <u>Gonser v. U.S.</u>, Case No. 5:00-cv-298-3, 2001 WL 721818 at *8, n. 14 (N.D. Ga. May 17, 2001). In the absence of a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

The Eleventh Circuit has explained the requirements for an Eighth Amendment violation.

> "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones...." <u>Farmer</u>, 511 U.S. at 832, 114 S. Ct. at 1976 (internal quotation and citation omitted).[21] Thus, in its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials provide humane conditions of confinement. <u>Id.</u> However, as noted above, only those conditions which objectively amount to an "extreme deprivation" violating contemporary standards of decency are subject to Eighth Amendment scrutiny. <u>Hudson</u>, 503 U.S. at 8-9, 112 S. Ct. at 1000.[22] Furthermore, it is only a prison official's subjective deliberate indifference to the substantial risk of serious harm caused by such conditions that gives rise to an Eighth Amendment violation. <u>Farmer</u>, 511 U.S. at 828, 114 S. Ct. at 1974 (quotation and citation omitted); <u>Wilson</u>, 501 U.S. at 303, 111 S. Ct. at 2327.[23]

<u>Thomas v. Bryant</u>, 614 F.3d 1288, 1306-07 (11th Cir. 2010). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and

---

[21] <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).

[22] <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992).

[23] <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991).

a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need. Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (citation and internal quotations marks omitted).

Brown, 387 F.3d at 1351.

Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (describing the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citing Farrow, 320 F.3d at 1245); Lane v. Philbin, 835 F.3d 1302, 1308 (11th Cir. 2016) (setting forth the three components) (citing Farrow, 320 F.3d at 1245).

> In Estelle[24], the Supreme Court established that "deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106, 97 S. Ct. 285; Farmer, 511 U.S. at 835, 114 S. Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added). In interpreting Farmer and Estelle, this Court

---

[24] Estelle v. Gamble, 429 U.S. 97 (1976).

> explained in <u>McElligott</u>[25] that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." <u>McElligott</u>, 182 F.3d at 1255; <u>Taylor</u>,[26] 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

<u>Farrow</u>, 320 F.3d at 1245-46. Notably, the Supreme Court has stated that a plaintiff may demonstrate the deliberate indifference of prison officials by showing that they intentionally interfered with prescribed treatment or intentionally denied access to medical care. <u>See</u> <u>Estelle</u>, 429 U.S. at 104-05.

Defendants seek dismissal of Castillo's Eighth Amendment claims against them, arguing that Castillo fails to provide sufficient facts that would entitle him to relief. <u>See</u> Federal Defendants Motion at 11-13. Viewing the facts in the light most favorable to Castillo, as the Court must, the Court agrees, in part, but is not so convinced regarding Castillo's claims against Defendant Montalvo. In reaching these conclusions, the Court will address Castillo's claims against each Defendant separately.

## 1. Defendant Morales[27]

The extent of Castillo's claim against Defendant Morales is that he went to sick call on June 30, 2016, and "was seen by PA Morales for pain medication and his infected toe." Addendum 2 at 10. The Court finds that these allegations if proven would fail to state a plausible claim for a

---

[25] <u>McElligott v. Foley</u>, 182 F.3d 1248 (1976).

[26] <u>Taylor v. Adams</u>, 221 F.3d 1254 (11th Cir. 2000).

[27] In Addendum 1, Castillo alleges Defendant Morales refused to provide him any immediate medical attention during an examination in the medical department when Castillo complained of breathing problems. <u>See</u> Addendum 1 at 9-10. However, because Castillo failed to exhaust this claim, <u>see</u> V.A.(3)(a), <u>supra</u>, the Court does not address it here.

violation of the Eighth Amendment. Further, Castillo failed to exhaust this claim. As such, the Federal Defendants Motion is due to be granted as to Castillo's claims against Defendant Morales.

## 2. Defendant Dr. Lopez

Castillo claims that on May 13, 2016, at around 1:30 a.m., his "back went out while walking to the bathroom." Addendum 2 at 9. Castillo was examined by P.A. Ramos who gave him a back brace and a shot of "Therathol" and sent him back to his unit. Id. A few hours later Castillo's back tightened up and he fell to the floor. Id. Castillo was then taken to medical where he was seen by P.A. Ramos and Defendant Dr. Lopez. Id. at 9-10. Dr. Lopez told Castillo that he couldn't help him unless Castillo tried to move around. Id. at 10. Dr. Lopez treated Castillo's back pain with "over 7 or 8 shots of Therathol" and ice. Id. At around 3:00, after Castillo was able "to flop on one side and sit up" he was returned to the dorm. Id. The Court finds that these allegations if proven would fail to state a plausible claim for a violation of the Eighth Amendment. Further, Castillo failed to exhaust this claim.[28] As such, the Federal Defendants Motion is due to be granted as to Castillo's claims against Defendant Dr. Lopez.

## 3. Defendant Dr. Lee

The extent of Castillo's claims against Defendant Dr. Lee is that P.A. Ramos told Castillo that "Dr. Lee never put him in for the MRI." Addendum 2 at 10. The Court finds that these allegations if proven would fail to state a plausible claim for a violation of the Eighth Amendment. As such, the Federal Defendants Motion is due to be granted as to Castillo's claims against Defendant Dr. Lee.

---

[28] While Castillo did fully exhaust a claim relating to back pain (case number 842524), that claim was initiated on October 14, 2015, and the Central Office issued its response on April 12, 2016. However, Castillo's allegations against Dr. Lopez arise out of a visit to medical on May 13, 2016.

### 4. Defendant Dr. Venuto

Castillo claims that he was seen by Defendant Dr. Venuto on September 11, 2015 for his back pain. Addendum 2 at 7. He alleges that Dr. Venuto only prescribed Ibuprofen 800 mg and did not follow up with any evaluation of his serious medical needs. Id. Further, he claims that he has had back pain for years, but only receives the type of treatment that Dr. Venuto provided, resulting in long-term back pain. Id. at 12. The Court declines to find that these allegations if proven would fail to state a plausible claim for a violation of the Eighth Amendment.

### 5. Defendant Delalamon

Castillo claims that on November 4, 2015, Defendant Delalamon called him to medical to give him a rectal exam after he complained about rectal bleeding. Addendum 2 at 7. Delalamon told Castillo that "he will be seeing her on Firday [sic] about all other problems claimant was having." Id. Castillo's allegations do not discuss the outcome of the Friday appointment. On November 9, 2015, Castillo went to medical after he experienced pain in both hands and numbness in his arms. Id. An EKG was performed, and his vitals were taken by a registered nurse. Id. Delalamon then told Castillo everything was ok, and he could go back to the housing unit. Id. The Court finds that these allegations if proven would fail to state a plausible claim for a violation of the Eighth Amendment related to Delalamon's alleged deliberate indifference to Castillo's back pain. As such, the Federal Defendants Motion is due to be granted as to Castillo's claims against Defendant Delalamon.

### 6. Defendant Montalvo

Castillo alleges that he has brought his medical issues to Defendant Montalvo's attention in person and via prison emails but still suffers from severe, long-term back and knees issues due

to a lack of treatment. <u>See</u> Addendum 2 at 7, 9-10, 12-26. The Court declines to find that these allegations if proven would fail to state a plausible claim for a violation of the Eighth Amendment.

### D. Qualified Immunity

Defendant Montalvo alternatively asserts that he is entitled to qualified immunity. <u>See</u> Federal Defendants Motion at 9-13. As to qualified immunity, the Eleventh Circuit has stated:

> To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. <u>Maddox v. Stephens</u>, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." <u>Jordan v. Doe</u>, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.

> Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [the plaintiff] to demonstrate that qualified immunity is inappropriate. <u>See</u> <u>id</u>. To do that, [the plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [Plaintiff's] constitutional right and that that right was "clearly established...in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001), <u>overruled</u> <u>in</u> <u>part</u> <u>on</u> <u>other</u> <u>grounds</u> by <u>Pearson</u>, 555 U.S. 223, 129 S. Ct. 808. We may decide these issues in either order, but, to survive a qualified-immunity defense, [the plaintiff] must satisfy both showings. <u>Maddox</u>, 727 F.3d at 1120–21 (citation omitted).

<u>Jones v. Fransen</u>, 857 F.3d 843, 850-51 (11th Cir. 2017).

The Eleventh Circuit has explained the proper analysis when a district court considers a motion to dismiss based on qualified immunity.

> When presented with the officers' motions to dismiss, both our precedent and precedent from the Supreme Court instruct the district court to analyze whether, taking [Plaintiff]'s allegations as true,

the...complaint asserted a violation of a clearly established constitutional right. See Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001) ("[T]he [qualified immunity] defense may be raised and considered on a motion to dismiss; the motion will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.' ") (quoting Williams, 102 F.3d at 1182)[29]; Santamorena v. Ga. Military College, 147 F.3d 1337, 1342 (11th Cir. 1998) (affirming grant of motion to dismiss on qualified immunity grounds because the "complaint fail[ed] to allege the violation of a clearly established constitutional right"). See also Siegert v. Gilley, 500 U.S. 226, 232, 111 S. Ct. 1789, 114 L.Ed.2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits.")....

Joseph v. Gee, 708 F. App'x 642, 643-44 (11th Cir. 2018) (per curiam).

Defendant Montalvo asserts that he is entitled to qualified immunity because he did not violate Castillo's Eighth Amendment rights. See Federal Defendant Motion at 12-13. However, upon review of the Amended Complaint, the Court finds this assertion unavailing. The Court is of the view that Castillo has stated plausible Eighth Amendment claims against Defendant Montalvo, and therefore, the Defendant is not entitled to qualified immunity at this stage of the litigation. Accordingly, the Federal Defendants' Motion based on qualified immunity is due to be denied as to Defendant Montalvo.

### E. Sovereign Immunity

Castillo also appears to raise a claim of deliberate indifference against the Federal Bureau of Prisons (BOP). See Amended Complaint at 2, 3-4. However, the Supreme Court has held that

---

[29] Williams v. Ala. State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997).

federal agencies, like the BOP, cannot be sued for damages arising from an agency's alleged violation of a plaintiff's constitutional rights. See F.D.I.C. v. Meyer, 510 U.S. 471, 486 (1994). Thus, Castillo cannot maintain an independent constitutional claim against the BOP because it is a federal agency and the BOP is due to be dismissed from this action.

### F. Federal Tort Claims Act

Next, the Court turns to the Federal Defendants' assertions that Castillo has failed to state a claim for negligence under the FTCA. Federal Defendants Motion at 14-16.

### 1. Proper Defendant under the FTCA

The FTCA provides the exclusive remedy for allegations against federal employees based on personal injury resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. See 28 U.S.C. §§ 1346(b), 2671 et seq.; Cheves v. Dep't of Veterans Affairs, 227 F. Supp. 2d 1237, 1245 (M.D. Fla. 2002) (the only possible remedy for a cause of action for medical malpractice against the United States is under the FTCA). FTCA liability attaches "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Notably, the United States is the only permissible defendant in an FTCA action. See 28 U.S.C. § 2679(b)(1) (the FTCA remedy against the United States "is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim"). Therefore, the claims under the FTCA against Defendants Ocasio, Morales, Lopez, Lee, Venuto, Delalamon, Montalvo, Faubion, and the Bureau of Prisons are due to be dismissed.

## 2. Medical Negligence under the FTCA

It is well-established that the United States is immune from suit unless it has consented to be sued, and its consent to be sued defines the terms and conditions upon which it may be sued. United States v. Mitchell, 445 U.S. 535, 538 (1980). The FTCA provides that the United States may be held liable for money damages for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" in the same manner and to the same extent as a private person under like circumstances. 28 U.S.C. § 1346(b)(1); Turner ex rel. Turner v. United States, 514 F.3d 1194, 1203 (11th Cir. 2008). Thus, the "FTCA is a specific, congressional exception" to the United States' sovereign immunity. Suarez v. United States, 22 F.3d 1064, 1065 (11th Cir. 1994). As such, the waiver of sovereign immunity permitted under the FTCA "must be scrupulously observed, and not expanded, by the courts." Id.

Pursuant to the FTCA, the liability of the United States is determined "in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), which, in this case, is the state of Florida. Accordingly, a plaintiff making a claim for negligence in Florida must show that the defendant owed him a duty of care, the defendant breached that duty, and that the breach caused the plaintiff to suffer damages. Stone v. United States, 373 F.3d 1129 (11th Cir. 2004) (per curiam). This standard is codified in Florida Statute section 766.102. Those regulations specifically state that in "any action for recovery of damages based on ... personal injury of any person in which it is alleged that such ... injury resulted from the negligence of a health care provider ... the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider." See Fla. Stat. § 766.102.

Viewing the facts in the light most favorable to Castillo, as the Court must, the Court is not convinced that he has failed to provide sufficient facts to state a plausible claim for relief. In reaching this conclusion, the Court observes that Castillo asserts medical staff at Coleman denied him proper medical care resulting in severe, long-term back issues. Castillo made numerous complaints regarding his treatment and the delays in receiving the treatment. The Court declines to find that these allegations if proven would fail to state a plausible claim of medical negligence. As such, the Federal Defendants' Motion is due to be denied as to Castillo's medical negligence tort claim against the United States.

Therefore, it is now

**ORDERED:**

1.      Defendant Lu Anne Faubion's Motion to Dismiss (Doc. 38) is **GRANTED** to the extent the claims against this Defendant are dismissed without prejudice. The Clerk must terminate Defendant Faubion as a Defendant.

2.      The Federal Defendants' Motion to Dismiss (Doc. 42) is **PARTIALLY GRANTED** to the extent that:

      a.      the claims against the Bureau of Prisons are **DISMISSED** on the basis of sovereign immunity;

      b.      the claims identified in Addendum 1 are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies;

      c.      the claims against Dr. Morales relating to foot/toe pain are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies;

      d.      the claims related to Castillo's June 22, 2015 (back pain – administrative remedy number 828079) and April 18, 2017 (foot/toe pain – administrative

remedy number 899619 and rectal bleeding – administrative remedy number 899622) Requests for Administrative Remedy are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies;

  e.  the remaining <u>Bivens</u> claims against Dr. Morales and all claims against Warden Ocasio, Dr. Lopez, Dr. Lee, and Defendant Delalamon are **DISMISSED** for failure to state a claim; and

  f.  the FTCA claims against all Defendants other than the United States are **DISMISSED** for failure to state a claim.

  3.  In all other respects, the Federal Defendants' Motion to Dismiss is **DENIED**.

  4.  Pursuant to Rule 54(b), Federal Rules of Civil Procedure, finding no just reason for delay, the Court directs the Clerk of Court to enter judgment of dismissal in accordance with this order and to terminate Defendants the Bureau of Prisons, Warden Ocasio, Dr. Morales, Dr. Lopez, Dr. Lee, and Defendant Delalamon from this action.

  5.  **No later than April 15, 2019,** the remaining Defendants must respond to the Amended Complaint.

  **DONE AND ORDERED** in Chambers this 20th day of March, 2019.

MARCIA MORALES HOWARD
United States District Judge

c:
Nelson Castillo, 49532-018
Counsel of Record